IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ECEM EUROPEAN CHEMICAL MARKETING B.V., | CIVIL ACTION |
| Plaintiff, | NO. 05-3078 |
| v. | |
| THE PUROLITE COMPANY, | |
| Defendant. | |

**OPINION**

Slomsky, J.                                                                                                                                                             October 14, 2010

**I.    INTRODUCTION**

On July 8, 2010, following a jury trial in this case, Defendant The Purolite Company ("Purolite") filed the instant Motion for Post-Trial Relief (Doc. No. 117). Purolite moves to amend the judgment entered on June 10, 2010 in favor of Plaintiff ECEM European Chemical Marketing B.V. ("ECEM") and against Purolite, by reducing ECEM's award to $405,183 from $785,725. In addition, Purolite requests an award of prejudgment interest in the amount of $80,037.52 on the $245,213 judgment entered in favor of Purolite and against ECEM on Purolite's counterclaim.[1] Finally, Purolite renews its Motion for a Directed Verdict, alleging that the evidence showed that a document entitled "General Terms and Conditions of Sale" was not part of the contract between the parties.

On July 26, 2010, ECEM filed a Response in Opposition to Purolite's Motion for Post-Trial Relief (Doc. No. 124). On September 7, 2010, the Court held a hearing on post-trial motions filed

---

[1] Purolite concedes that if it is entitled to prejudgment interest, that ECEM is also entitled to prejudgment interest. Purolite argues that the pertinent rate of interest is 6%.

by the parties.[2]  For the following reasons, Purolite's Motion for Post-Trial Relief (Doc. No. 117) will be granted in part and denied in part.

**II.     BACKGROUND**

A statement of facts and procedural history of this case prior to trial are fully set forth in the Court's Opinion dated January 29, 2010 covering five pre-trial Motions *in Limine*. (Doc. No. 86 ["Opinion"].)  In that Opinion, the Court denied Purolite's Motion *in Limine* to preclude ECEM from offering at trial a document entitled General Terms and Conditions of Sale ("GTCS"). Purolite argued that the GTCS was inadmissible parol evidence that did not form part of the 2004 Purchase Order ("2004 Contract"), the operative contract between ECEM and Purolite. ECEM was a supplier of styrene, which Purolite used in its manufacturing plant. The 2004 Contract covered the shipments of styrene.

The GTCS provided, *inter alia*, that ECEM had the right to recover statutory interest plus an additional 4% upon Purolite's failure to pay an invoice. In addition, the GTCS provided for recovery of fees and costs incurred by ECEM in pursuing payment under the contract. Purolite argued that the 2004 Contract represented the entire agreement between the parties, and the GTCS was inadmissible to vary, alter or modify the terms of the 2004 Contract. The GTCS provides in relevant part as follows:

> 2. If the term of payment is exceeded all costs of collection, both in and out of court, shall be for the account of the Buyer. . . .
>
> 3. If the Buyer has not made payment within 8 days from the invoice date and also in the event the parties agree upon a term of payment of more than 8 days the Buyer shall pay the

---

[2] On July 8, 2010, Plaintiff ECEM also filed a Motion for Post-Trial Relief (Doc. No. 118). The Court is issuing a separate opinion on this Motion.

seller interest at the rate of 4% above the statutory interest.
(GTCS, Article 8, ¶¶ 2-3.) The GTCS is governed by the law of the Netherlands. (GTCS, Article 14, ¶ 1.) The Netherlands' statutory interest rate is 8%.

In response to Purolite's Motion *in Limine*, ECEM maintained that the GTCS was a part of the contract between the two parties. Each shipment of styrene sent to Purolite, beginning in 2002, contained an invoice for payment that expressly incorporated the GTCS. ECEM argued that Purolite approved each invoice in writing, and during the three-year relationship between the parties, Purolite consistently accepted shipments of styrene and invoices, each of which contained a reference to the GTCS.

In the Opinion dated January 29, 2010, this Court ruled that the parol evidence rule does not apply under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). The CISG governs cases involving contracts for the sale of goods between parties whose principal place of business are located in different nations. The CISG is applicable here. The Court concluded that unlike the parole evidence rule, the CISG allows evidence of the parties' intent to be admissible at trial to interpret the terms of an agreement. Consequently, the Court denied Purolite's Motion *in Limine* to preclude evidence of the GTCS, though a question for the jury remained as to whether the GTCS actually formed a part of the contract between ECEM and Purolite. Accordingly, at trial, ECEM introduced the GTCS, which was marked as Exhibit "P-91."

ECEM also introduced at trial a document marked Exhibit "P-111A," which was a "Summary of Outstanding Invoices and Interest Claimable." Exhibit P-111A showed that Purolite owed ECEM $405,183 for unpaid invoices for five shipments of styrene. ECEM claimed at trial that it was entitled to $277,645.79 interest on the $405,183 for the unpaid invoices. The amount of

interest was calculated by using the 8% Netherlands statutory interest plus the 4% interest noted in Article 8, Section 3 of the GTCS. Finally, ECEM introduced Exhibit "P-44," which showed that ECEM incurred $304,612.51 in attorney's fees in this case. In total, ECEM sought at trial an award of $987,441.30 for Purolite's breach of contract.[3]

At the close of ECEM's case, Purolite moved to exclude from the jury's consideration the applicability of the GTCS, contending that there was no evidence upon which a jury could have found that GTCS formed part of the contract. The Court denied Purolite's Motion. In the Motion currently before the Court, Purolite renews its Motion for a Judgment as a Matter of Law on the applicability of the GTCS, and the proper calculation of damages in view of the jury's responses to Interrogatories submitted for their consideration.

On June 8, 2010, after the close of testimony and arguments of counsel, the Court instructed the jury on the pertinent law. With respect to damages, the Court instructed the jury in accordance with "Joint Proposed Point for Charge No. 29,"[4] which parallels the language in Article 74 of the CISG and provides as follows:

> Damages for breach of contract by one party consist of a sum equal to the loss suffered by the other party as a consequence of the breach.

---

[3] The jury awarded ECEM $785,725. Since the jury found that ECEM was entitled to be paid under the 2004 Contract, this award must include the $405,183 for breach of the 2004 Contract, including the failure to pay the outstanding invoices. It is unclear how the jury calculated damages above this amount. Based on the trial evidence, the overage could only be sourced from ECEM's claim for interest and attorney's fees under the GTCS. For reasons noted in this Opinion, ECEM is not entitled to receive an award of interest and attorney's fees under the GTCS.

[4] On May 21, 2010, the parties submitted "Joint Proposed Points For Charge." (Doc. No. 100). On June 7, 2010, the Court held a charge conference with the parties in Chambers, at which time the Court ruled on the parties' Joint Proposed Points For Charge and each party's Supplemental Points For Charge.

> Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

(Doc. No. 100 at 34.)

The Court also instructed the jury in accordance with "Joint Proposed Point For Charge No. 33," which provides as follows:

> If you find that the plaintiff or the defendant breached the contract, then you must decide, based on the evidence that plaintiff or defendant has presented, the amount of money damages that will compensate the plaintiff or defendant for its loss as a result of the breach. Your aim in calculating this amount should be to put the plaintiff or defendant, as nearly as possible, in the same position it would have occupied had the contract been performed. In determining this amount, you should remember that the plaintiff or defendant is entitled to be reimbursed for its loss, in addition to all reasonable and proper expenses incurred as a result of the plaintiff's or defendant's reliance on the contract.[5]

(Doc. No. 100 at 38.)

At trial, after instructing the jury on the applicable law, the Court gave the jury five (5) Interrogatories to answer during their deliberations. Interrogatories Nos. 1-3 provided as follows:

> 1. Has Plaintiff ECEM European Chemical Marketing, B.V. proven by a preponderance of the evidence that ECEM is entitled to payment for deliveries of styrene under its contract made with Defendant Purolite Company for the year 2004 for

---

[5] At the charge conference, the parties agreed to modify "Joint Proposed Point For Charge No. 33" to add the phrase "or defendant" to the instruction in order to cover Purolite's counterclaim against ECEM. Moreover, although the Court instructed the jury that it could award "all reasonable and proper expenses incurred as a result of Plaintiff's or Defendant's reliance on the contract," it is clear that the only out-of-pocket expense incurred by Plaintiff and proven at trial was for attorney's fees. However, as discussed *supra*, attorney's fees could only be awarded under the GTCS, which the jury found was not part of the 2004 Contract. Thus, the jury's award of any attorney's fees cannot be sustained.

5

       unpaid invoices?

    Yes _____       No _____

       (PLEASE PROCEED TO QUESTION 2.)

2.    Do you find that Plaintiff ECEM has proven by a preponderance of the evidence that the "Terms and Conditions of Sale" referred to on the invoices formed a part of the contract with Defendant Purolite Company?

    Yes _____       No _____

       (IF YOU ANSWERED "YES" TO QUESTION 1, OR "YES" TO BOTH QUESTIONS, PLEASE PROCEED TO QUESTION 3. IF YOU ANSWERED "NO" TO QUESTION 1, PLEASE PROCEED TO QUESTION 4.)

3.    What amount of money, if any, would reasonably and fairly compensate Plaintiff ECEM European Chemical Marketing, B.V. for Defendant Purolite Company's breach of contract?

    $ _____

During deliberations, the jury asked for clarification on Interrogatory No. 2. The inquiry from the jury was as follows:

> We would like clarification on Question 2. If we answer no, may we still add interest and lawyers' fees in the total amount awarded in Question 3?

(Doc. No. 113.)

After a discussion with counsel, the Court instructed the jury in regard to their question:

> The response is that you are finders of fact and you make factual findings and you have to apply the law that is contained in my charge. So, we're leaving to you to make a judgment as to how a specific question should be answered and what flows from that question, based upon your fact-finding function, your finding of fact and the charge that I have given you in this case, which you have.

6

On June 8, 2010, the jury rendered its verdict. As to Interrogatory No. 1, the jury answered "Yes," finding that ECEM was entitled to payment for the unpaid invoices. However, the jury answered "No" to Interrogatory No. 2, finding that the GTCS did not form part of the contract between the parties. Nevertheless, under Interrogatory No. 3, the jury entered a verdict on ECEM's claim against Purolite in the amount of $785,725, or $376,042 above the $405,183 amount ECEM sought for the unpaid invoices.[6] (Doc. No. 114.)

Purolite's chief argument in the Post-Trial Motion is that a jury award of an amount over and above $405,183 is a clear error of fact and law because the jury found in answering Interrogatory No. 2 that the GTCS, which allows a statutory interest rate of 8% plus an additional 4% interest and for payment of attorney's fees, did not form a part of the 2004 Contract between ECEM and Purolite. Accordingly, Purolite requests that the Court mold and reduce the judgment to $405,183, which is simply the amount Purolite owes ECEM on the unpaid invoices.

## III.   LEGAL STANDARD

Purolite moves to amend or alter the judgment entered by the Court under Federal Rule of Civil Procedure 59(e) and E. D. Pa. Local Civil Rule 7.1(g) on the ground that the jury made an impermissible monetary award. A court should grant a motion for reconsideration sparingly "because courts have a strong interest in the finality of judgments." Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002) (internal quotation omitted); Pa. Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522, 524 (E.D. Pa. 1992). A motion for reconsideration is an extraordinary remedy that will

---

[6] The jury also entered a verdict on Purolite's cross-claim against ECEM in the amount of $245,213. (Doc. No. 114.) On June 10, 2010, the Court entered the original judgment on both verdicts. (Doc. Nos. 115, 116.)

be granted only if the moving party can demonstrate one of the following: (1) there has been an intervening change in controlling law or fact; (2) new evidence has become available; or (3) there is a need to prevent manifest injustice or correct a clear error of law or fact. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Mere dissatisfaction with a court's ruling is not a proper basis for reconsideration.

"A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award." Cortez v. Trans Union, LLC, No. 08-2465, 2010 WL 3190882, at *21 (3d Cir. Aug. 13, 2010) (quoting Thabault v. Chait, 541 F.3d 512, 532 (3d Cir. 2008)). "[A] District Court reviewing a jury verdict has an "obligation . . . to uphold the jury's award if there exists a reasonable basis to do so." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 351-52 (3d Cir. 2001) (quoting Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989)). "[T]he court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." Id. For a court to disturb a jury verdict, "the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court." Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979); see also Feldman v. Phila. Hous. Auth., 43 F.3d 823, 833 (3d Cir. 1994) ("The jury's verdict may not be disturbed unless the record is critically devoid of the minimal amount of evidence upon which the jury could have reached its verdict."); Swineford v. Snyder County Pa., 15 F.3d 1258, 1265 (3d Cir. 1994) ("A jury verdict will not be overturned unless the record is critically deficient of that quantum of evidence from which a jury could have rationally reached its verdict."); Judkins v. HT Window Fashions Corp., No. 07-0251, 2010 WL 1292158, at *20 (W.D. Pa. Mar. 31, 2010) (refusing to disturb a jury verdict that was

"reasonable and in accord with the evidence").

## IV. DISCUSSION

### A. Motion to Mold ECEM's Judgment

Purolite contends that since the jury found that the GTCS was not part of the contract between the parties, the jury could not, as a matter of fact and law, award ECEM an amount above the $405,813 due for unpaid invoices. In other words, Purolite argues that the jury was required to answer Interrogatory No. 2 with a "YES," finding that the GTCS was part of the 2004 Contract, in order for the jury to award ECEM damages for the additional 8% and 4% interest, plus attorney's fees. Since the jury answered Interrogatory No. 2 with a "NO," Purolite contends that ECEM's damages are limited to the amount of the unpaid invoices only, and any interest and attorney's fees requested by ECEM pursuant to the GTCS as a result of Purolite's breach should be disregarded.

The Court must mold the judgment entered in favor of ECEM because the jury committed a clear error of fact and law by returning a verdict in the amount of $785,725 for ECEM. Because the jury found in its answer to Interrogatory No. 2 that GTCS did not form part of the contract, ECEM is only entitled to damages of $405,183 for the unpaid invoices and to an award of prejudgment interest on that amount at the rate of 6% in accordance with Pennsylvania law. ECEM is not entitled to recover attorney's fees in this case since the parties did not have a private agreement allowing for recovery of attorney's fees. The record is clear that ECEM sought attorney's fees only under GTCS, which allows for recovery of such fees, if it is part of the contract.

At trial, during a conference outside the presence of the jury, the Court stated to counsel, "At least, the award of attorney's fees was under the terms and conditions. There's no question about that." Counsel for ECEM replied, "There is no question about that, your honor. I put the attorney's

fees in as part of the terms and conditions." (Transcript, June 8, 2010, 22:3-10.) As noted *supra*, the jury found that the GTCS did not form a part of the contract between the parties, precluding ECEM's recovery of attorney's fees in this case. Consequently, the issue before the Court is whether the jury's award of $785,725 is supported by the evidence offered at trial in view of the jury's finding that the GTCS was not part of the contract.

There is no doubt that ECEM is entitled to at least $405,183, the amount of the unpaid invoices. Because the jury found that the GTCS, which provided for 8% statutory interest plus another 4% interest, is not a part of the 2004 Contract, the Court now must determine the proper interest rate to be applied in this case. Since the jury found that the GTCS was not part of the 2004 Contract, the Netherlands' statutory interest rate of 8% is not applicable here. Accordingly, for reasons discussed *infra*, the Court will apply the Pennsylvania statutory interest rate of 6%.[7] McDermott v. Party City Corp., 11 F. Supp. 2d 612, 632 (E.D. Pa. 1998) (citing 41 Pa. C.S.A. § 202). The Court will mold ECEM's judgment by adding 6% prejudgment interest to the $405,183,

---

[7] Article 78 of CISG provides: "If a party fails to pay the price or any other sum that is in arrears, the other party is entitled to interest on it, without prejudice to any claim for damages recoverable under article 74." In other words, Article 78 "clearly states that in the event of non-payment or delayed payment by a party, the opposing party is entitled to prejudgment interest." San Lucio, S.R.L. v. Import Storage Servs., LLC, No. 07-3030, 2009 WL 1010981, at *3 (D.N.J. Apr. 20, 2009).

However, CISG provides no specific interest rate. Rather, under Article 7(2), CISG explains that "[q]uestions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law." Consequently, because CISG does not settle the matter of the applicable interest rate for this case, the Court finds that general principles dictate that the Pennsylvania statutory interest rate of 6% should apply here to both parties.

the amount of the unpaid invoices.⁸  At 6%, the total amount of interest is $139,430 as agreed to by the parties at the hearing held on September 7, 2010.  Thus, the total judgment in favor of ECEM and against Purolite will be reduced to $544,613.

### B.     Motion for Prejudgment Interest on Purolite's Award

The jury found that $245,213 would reasonably and fairly compensate Purolite for ECEM's breach of contract stemming from late deliveries of styrene in November and December 2004. Purolite now requests the Court to award prejudgment interest in its favor at the rate of 6%, or $80,037.  Purolite submits that it is entitled to prejudgment interest accrued from December 22, 2004, when Purolite received the late shipments and sustained its damages, to June 8, 2010, when Purolite received its judgment on the counterclaim.⁹

"A post-judgment motion to amend the judgment to provide for prejudgment interest constitutes a Rule 59(e) motion.  This is so because the motion involves the reconsideration of matters encompassed within the merits of the judgment . . . and because prejudgment interest is an element of a plaintiff's complete compensation." 12 James Wm. Moore, Moore's Federal Practice,

---

⁸ Though ECEM never formally applied for prejudgment interest, in its response to Purolite's Post-Trial Motion, ECEM explained in relevant part: "[I]f the Court were to diminish ECEM's award by subtracting any interest awarded by the jury pursuant to the Court's instructions, the Court should also simultaneously amend the award by adding prejudgment interest at the rate determined by the Court, without need for ECEM to reapply for such interest." (Doc. No. 124 at 5 n.9.)  ECEM's statement in its response to Purolite's motion is sufficient for the Court to apply prejudgment interest to its award to prevent manifest injustice, since Purolite is entitled to prejudgment interest on its damages awarded by the jury.

⁹ Although the jury rendered its verdict on June 8, 2010, the Court did not enter judgment on Purolite's counterclaim until June 10, 2010.  See Am. Demolition, Inc. v. Richard I. Rubin & Co., No. 88-636, 1993 WL 452078, at *1 (E.D. Pa. Oct. 27, 1993) ("The right to prejudgment interest accrues from the time the debtor withholds payment until the court enters a judgment.") (internal citation omitted).  The two-day difference, however, does not materially affect the interest rate calculation which was based on a period of 5.44 years.

§ 59.30[2][c], 59-105 (3rd Ed. 2010); see Osterneck v. Ernst & Whitney, 489 U.S. 169, 174-76 (1989). Under Pennsylvania law, prejudgment interest is generally awarded as a legal right on money owed under a contract. Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp., 643 F. Supp. 2d 675, 686 (E.D. Pa. 2009); Parexcel Int'l Corp. v. Feliciano, No. 04-3798, 2008 WL 5467609, at *3 (E.D. Pa. Dec. 4, 2008) (citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)). The purpose of prejudgment interest in a contract case "is to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 2005) (internal quotation omitted). Further, "prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the reward of interest inequitable." Hartsfield, Titus, and Donnelly v. Loomis Co., No. 08-3329, 2010 WL 596466, at *4 (D.N.J. Feb. 17, 2010) (quoting Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992)).

> Interest is recoverable as contract damages:
>
> > (1) If the breach [of a contract] consists of a failure to pay a definite sum of money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
> >
> > (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts § 354 (1979); see also Siematic, 643 F. Supp. 2d at 686-86 (discussing prejudgment interest calculation in Pennsylvania). Here, the second element of Restatement § 354 is applicable because ECEM's breach of contract did not consist of a failure to pay a definite sum of money. The damages were calculated based upon the cost to Purolite of

closing its plant in Romania because styrene was not shipped timely by ECEM to the plant. The lack of styrene held up production and the plant had to be shut down.

ECEM asserts that Purolite is not entitled to prejudgment interest in this case because Purolite claimed unliquidated damages for loss of overhead expenses. Under Pennsylvania law, the award of prejudgment interest in a contract action is a legal right. Edwards v. Wyatt, 330 Fed. App'x 342, 352 (3d Cir. 2009) (citing Verner v. Shaffer, 500 A.2d 479 (Pa. 1991)). "This principle holds when contract damages are liquidated or unliquidated." Id. (citing Spang & Co. v. USX Corp., 599 A.2d 978, 983-84 (Pa. 1991) ("No exception has been carved out where damages must be determined at trial.")). Consequently, ECEM's argument that Purolite is not entitled to prejudgment interest is unavailing because Pennsylvania precedent allows a party to recover prejudgment interest on unliquidated damages.

Further, ECEM argues that when a party does not prevail in its case, prejudgment interest should not be awarded. For this proposition, ECEM relies upon, Alexiou v. Moshos, No. 08-5491, 2009 WL 5092810 (E.D. Pa. 2009), where the court denied prejudgment interest to a plaintiff who was awarded $90,000 on her breach of contract action. In that case, the defendant was awarded $94,000 on his counterclaim. Finding that plaintiff owed defendant a net award of $4,000, the court refused to award prejudgment interest to plaintiff because she did not prevail and judgment was not entered in her favor. Id. at *6.

In this case, the jury found that ECEM breached its contract with Purolite by failing to timely deliver shipments of styrene. Consequently, the jury entered a verdict in favor of Purolite on its counterclaim and awarded Purolite $285,213 in damages. Unlike the situation in Alexiou, on June 10, 2010, this Court entered judgment in favor of Purolite on its counterclaim in the full amount

awarded by the jury. (Doc. No. 116.) Though the Court also entered judgment against Purolite and in favor of ECEM for a larger amount, Purolite can still be considered a "prevailing party" which is entitled to prejudgment interest. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (prevailing parties are ones that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"); Swietlowich v. County of Bucks, 620 F.2d 33, 34 (3d Cir. 1980) (explaining that prevailing party is one that "essentially succeeds" on a claim); Singer Mgmt. Consultants, Inc. v. Milgram, No. 09-2238, 2010 WL 3037394, at *5 (3d Cir. Aug. 5, 2010) (holding that a party prevailed because it obtained "judicially sanctioned" relief "on the merits").

Here, Purolite succeeded on its counterclaim, and the Court entered judgment in favor of Purolite in the amount of $245,213. Justice requires that Purolite receive prejudgment interest on its award under Pennsylvania law. Accordingly, the Court will grant Purolite's Motion for Prejudgment Interest and will award Purolite an additional $80,037 based on a 6% interest rate accrued over 5.44 years. Thus, the total judgment in favor of Purolite and against ECEM will be changed to $325,250.

## C. Renewed Motion to Enter Judgment as a Matter of Law

In it's Post-Trial Motion, Purolite renews its Motion for Judgment as a Matter of Law with respect to the applicability of the GTCS. Purolite argues that there was no evidence presented at trial upon which a jury could have found that the GTCS formed part of the agreement between ECEM and Purolite.

In reviewing a Motion for Judgment as a Matter of Law, the Court must consider that this type of post-judgment motion should be granted only "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there

is insufficient evidence from which a jury could reasonably find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993); Enright v. Springfield Sch. Dist., No. 04-1653, 2007 WL 4570970, at *3 (E.D. Pa. Dec. 17, 2007) (discussing the standard of review on a Motion to Enter of Judgment as a Matter of Law).

As noted above, the Court denied Purolite's original Motion for Entry of Judgment as a Matter of Law at trial which sought to have the Court exclude the GTCS as being part of the 2004 Contract. Thereafter, in response to Interrogatory No. 2, the jury found that the GTCS did not form a part of the agreement between the parties. Regardless of the Court's pretrial ruling on the admissibility of the GTCS, the jury has now spoken on this issue, and the GTCS is not part of the contract. Given the rulings of the Court on prejudgment interest and attorney's fees, *supra*, and the answer of the jury to Interrogatory No. 2, the argument of Purolite with respect to the GTCS is moot.

V.  **CONCLUSION**

For the foregoing reasons, the Court will grant Purolite's Motion to Award Prejudgment Interest on Purolite's award at an interest rate of 6% in the amount of $80,037, for a total award of $325,250. The Court will mold the jury verdict in favor of ECEM to preclude any award of attorney's fees and interest under the GTCS. Consequently, ECEM is entitled to an award of $405,183 for unpaid invoices. Like Purolite, ECEM is also entitled to an award of interest at the rate of 6% for a total award of $544,613. Finally, the Court will deny Purolite's Renewed Motion to Enter Judgment as a Matter of Law with respect to its argument on the inadmissibility at trial of the GTCS. Appropriate Orders follow.